**Gregory Lee BAIZA, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 11–14–00067–CR**

Court of Appeals of Texas, Eastland.

Opinion filed March 31, 2016

Mark H. Dettman, Midland, for Appellant.

Teresa J. Clingman, District Attorney, Carolyn D. Thurmond, Assistant, Midland, for Appellee.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

JOHN M. BAILEY, JUSTICE

Gregory Lee Baiza appeals his jury conviction for sexual assault. The trial court found as "true" a prior conviction alleged for enhancement purposes and assessed punishment at confinement for a term of twelve years in the Institutional Division of the Texas Department of Criminal Justice. In two issues on appeal, Appellant challenges the admission of his recorded statement and the extraneous evidence of prior bad acts. We reverse and remand.

### Background Facts

Appellant and the complainant began dating in 2009 and were reportedly common-law married a month later. Appellant and the complainant had two children together during their marriage. The complainant testified that she and Appellant had consensual sex throughout their marriage. In October 2011, Appellant learned that the complainant was potentially pregnant with their third child. The complainant testified that Appellant became angry and demanded that she get an abortion. The complainant and Appellant argued for approximately thirty minutes, until Appellant went outside.

Appellant came back inside shortly thereafter. The complainant stated that Appellant approached her, lowered his pants, and requested oral sex. She testified that she started to perform oral sex but stopped when he called her a "bitch." The complainant said that Appellant then grabbed her by her hair and dragged her to the couch, telling her that, if she was "going to be a bitch and get pregnant, then [she] was going to be raped like a bitch." The complainant testified that she told Appellant to stop multiple times but that Appellant forced himself on her through her shorts and underwear. Appellant stopped when their oldest child came into the room in response to the complainant's crying and screaming.

The complainant then called the police. Patrol Officer Anthony Corson, with the Midland Police Department, responded to the call. He asked Appellant about what happened. Officer Corson testified that Appellant admitted that he and the com-

plainant had been arguing because Appellant had just lost his job. Appellant told Officer Corson that the complainant was acting "a bit crazy" and that she had smashed her head into a wall and had tried to cut herself. At that time, Appellant denied that he had penetrated the complainant and only admitted that he had run his hand up her thigh.

Officer Corson then called Detective Steven Sanders to the scene. Detective Sanders spoke to the complainant, who was undecided on whether to file charges. Detective Sanders then talked with Appellant, who was not in custody at this time. Appellant gave Detective Sanders a recorded statement. This initial statement from Appellant was offered without objection. In this statement, Appellant denied that he penetrated the complainant. Appellant also stated that the complainant decided to falsely accuse him of "rape."

The complainant then left for the hospital, whereupon she decided to press charges against Appellant. After the results of the SANE exam came back, Detective Sanders returned to Appellant's home and requested another statement from him. Appellant declined to make another statement at that time. Detective Sanders then placed Appellant under arrest. Detective Sanders testified that Appellant changed his mind about giving another statement after being placed under arrest. Appellant admitted during the second recorded statement that the complainant told him to stop but that he kept going.

### Analysis

In his first issue, Appellant asserts that his second recorded statement was inadmissible because Detective Sanders failed to comply with Article 38.22 of the Texas Code of Criminal Procedure when he read Appellant the statutory warnings. Specifically, Appellant contends that Detective Sanders read the warnings so fast that they were unintelligible and that Detective Sanders failed to advise Appellant that Appellant was free to terminate the interview at any time as required by Article 38.22, section 2(a)(5). *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(5) (West Supp. 2015). The State contends that the second recorded statement was admissible because Detective Sanders substantially complied with the requirements of Article 38.22.

Appellant did not file a pretrial motion to suppress his second recorded statement. However, Appellant's trial counsel advised the trial court at the beginning of trial that he was going to object to the admission of the second recorded statement because it contained statements made by Appellant as a result of a custodial interrogation when Appellant had not been given his Article 38.22 statutory warnings. *See id.* art. 38.22. The trial court listened to the recording prior to beginning testimony but did not make a ruling on its admissibility at that time. The matter of the admissibility of the second recorded statement arose again during Detective Sanders's trial testimony. Detective Sanders testified that, prior to Appellant giving the second recorded statement, he read Appellant his *Miranda*[1] warnings. The prosecutor asked Detective Sanders if he gave Appellant each of the five warnings contained in Article 38.22 of the Texas Code of Criminal Procedure. *See id.* art. 38.22, § 2(a). Detective Sanders answered in the affirmative as the prosecutor asked about each statutory warning individually. Detective Sanders acknowledged that he has "a tendency to talk really fast sometimes" and that he talked "kind of fast" when reading the warnings to Appellant. However, De-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tective Sanders testified that Appellant understood all of his rights.

Appellant objected to the State's offer of the second recorded statement on the ground that Detective Sanders did not advise him that he had the right to terminate the interview at any time. *See id.* art. 38.22, § 2(a)(5). Appellant also objected that the statement was given involuntarily because Detective Sanders spoke so quickly that no reasonable person could have understood the warnings. The trial court overruled both objections, and the second recorded statement was played for the jury. On appeal, Appellant challenges only the trial court's ruling on his first objection concerning Detective Sanders's compliance with providing the statutory warning contained in Article 38.22, section 2(a)(5).

In reviewing claims concerning *Miranda* violations and the admission of statements made as the result of custodial interrogation, we conduct the bifurcated review articulated in *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). *See Pecina v. State,* 361 S.W.3d 68, 78–79 (Tex. Crim.App.2012); *Leza v. State,* 351 S.W.3d 344, 349 (Tex.Crim.App.2011) ("[W]e measure the propriety of the trial court's ruling with respect to alleged *Miranda* violations under the totality of the circumstances, almost wholly deferring to the trial court on questions of historical fact and credibility, but reviewing *de novo* all questions of law and mixed questions of law and fact that do not turn on credibility determinations."). We afford almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that turn on the evaluation of credibility and demeanor. *Guzman,* 955 S.W.2d at 89. Questions of law and mixed questions of law and fact not turning on credibility are reviewed de novo. *Id.* When the trial court does not make express findings of

fact, as is the situation in this appeal, an appellate court must view the evidence in the light most favorable to the trial court's rulings, assuming that it made implicit findings of fact that are supported by the record. *Arguellez v. State,* 409 S.W.3d 657, 662–63 (Tex.Crim.App.2013). We will sustain the trial court's decision if it is correct on any applicable theory of law. *Id.*

Article 38.22 of the Texas Code of Criminal Procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding. *Herrera v. State,* 241 S.W.3d 520, 526 (Tex.Crim.App.2007). Section 3 provides in part that an oral statement is not admissible against a defendant in a criminal proceeding unless (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in Section 2(a) before the statement was made, and they are included on the recording; and (3) the defendant knowingly, intelligently, and voluntarily waived the rights set out in the warnings. CRIM. PROC. art. 38.22, § 3(a)(1)-(2); *Herrera,* 241 S.W.3d at 526. "The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception— the warning that an accused 'has the right to terminate the interview at any time' as set out in Section 2(a)(5) is not required by *Miranda.*" *Herrera,* 241 S.W.3d at 526 (footnotes omitted). Both *Miranda* and Article 38.22 require the State to prove two distinct elements—that the prescribed warnings were given to the suspect and that the suspect waived those rights. *Miranda,* 384 U.S. at 479, 86 S.Ct. 1602; *Joseph v. State,* 309 S.W.3d 20, 24 (Tex. Crim.App.2010). This appeal focuses on the first element—whether Detective Sanders gave the prescribed warnings to Appellant.

343

Strict compliance with Article 38.22 is not required; rather, "substantial compliance" will suffice. *Nonn v. State,* 41 S.W.3d 677, 679 (Tex.Crim.App.2001). Thus, the warnings given to an accused are effective even if not given verbatim, so long as they convey the "fully effective equivalent" of the warnings contained in Article 38.22, section 2(a). CRIM. PROC. art. 38.22, § 3(e)(2). "As long as the substance of the warnings [is] adequately communicated, the failure to give the warnings precisely as set forth in *Miranda* does not invalidate a subsequent confession." *Hutchison v. State,* 424 S.W.3d 164, 175 n. 7 (Tex.App.–Texarkana 2014, no pet.) (citing *California v. Prysock,* 453 U.S. 355, 360–62, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981)). But a statement will not be admissible if there is a complete omission of one of the warnings contained in Section 2(a). *See Woods v. State,* 152 S.W.3d 105, 116, 118 (Tex.Crim.App.2004).

The question presented in Appellant's first issue is simple: Did Detective Sanders give the prescribed warnings to Appellant? The evidence relevant to this issue comes from two sources. Detective Sanders testified at trial that he gave Appellant all of the statutory warnings, including the warning that Appellant had the right to terminate the interview at any time. On the other hand, we have the actual recording of the statement. It is an audio recording with no video.

We have listened to the recording several times. It is apparent that Detective Sanders read the warnings to Appellant by the detective's reference to reading from a card containing the warnings. However, Detective Sanders read the warnings very quickly, to the point that the later warnings are unintelligible at normal speed, particularly the warning that Appellant had the right to terminate the interview at any time. Detective Sanders concluded the warnings with the comment, "I'm talking real fast." Detective Sanders read the last three warnings to Appellant over the span of approximately six seconds. After listening to the recording several times at reduced speed, it appears that Detective Sanders read the "right to terminate" warning to Appellant. At actual speed, however, the "right to terminate" warning is unintelligible. Thus, the relevant evidence is conflicting.

The State submits that the issue of whether Detective Sanders admonished Appellant properly is a question of fact to be resolved by the trial court's evaluation of Detective Sanders's credibility and demeanor. In advancing this argument, the State relies in large part upon Detective Sanders's trial testimony to the effect that he gave each of the Article 38.22 warnings to Appellant. Appellant asserts that we should review the trial court's determination that the warnings were properly given under a de novo standard. *See Rutherford v. State,* 129 S.W.3d 221, 224 (Tex.App.–Dallas 2004, no pet.). Appellant relies upon the contents of the audio recording to argue that the trial court's determination should be overturned under the de novo standard. Accordingly, the parties disagree over the applicable standard of review.

As noted in recent cases from the Texas Court of Criminal Appeals, appellate courts have had difficulty in evaluating audio/video evidence in reviewing the trial court's suppression rulings. *See Tucker v. State,* 369 S.W.3d 179, 184 (Tex.Crim.App. 2012) (noting the court's " 'somewhat unclear' precedent regarding standards of review in order to decide which standard under *Guzman,* deferential or *de novo,* was appropriate to apply to video evidence" (quoting *Montanez v. State,* 195 S.W.3d 101, 108 (Tex.Crim.App.2006))). In *Carmouche v. State,* the testimony of po-

lice officers conflicted with a video recording on the question of whether or not the suspect had consented to a search. 10 S.W.3d 323, 332 (Tex.Crim.App.2000). However, the Court of Criminal Appeals declined to afford "almost total deference" to the trial court's implicit finding of consent because the nature of the evidence presented on the video did not depend "on an evaluation of credibility and demeanor." *Id.* (quoting *Guzman,* 955 S.W.2d at 89) (internal quotation mark omitted). The court concluded that the videotape constituted "indisputable visual evidence." *Id.*

*Montanez* also involved a video of a traffic stop. 195 S.W.3d at 103. After discussing its earlier decision in *Carmouche,* the court determined that "the deferential standard of review in *Guzman* applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Id.* at 109; *see also Manzi v. State,* 88 S.W.3d 240, 243 (Tex.Crim.App.2002) ("*In Anderson v. Bessemer City,* [470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ], the Supreme Court held that appellate courts should review a trial court's determination of historical facts under a deferential standard, even if that determination was *not* based upon an evaluation of credibility and demeanor.").

The Court of Criminal Appeals has discussed the standard of review it announced in *Montanez* in several subsequent cases. *State v. Duran,* 396 S.W.3d 563, 570–71 (Tex.Crim.App.2013); *Tucker,* 369 S.W.3d at 184; *Carter v. State,* 309 S.W.3d 31, 40 n. 47 (Tex.Crim.App.2010); *State v. Gobert,* 275 S.W.3d 888, 892 n. 13 (Tex.Crim. App.2009). *In Duran,* the court stated the applicable standard of review as follows:

Appellate courts afford almost total deference to the trial judge's determination of facts (if those facts are supported

by the record) when they review a suppression ruling. That same deferential standard of review applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a suppression hearing. Although appellate courts may review *de novo* indisputable visual evidence contained in a videotape, the appellate court must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation.

396 S.W.3d at 570–71 (alteration in original) (footnotes and quotation marks omitted). Judge Alcala described the applicable standard in the following manner in her concurring opinion in *Tucker:*

As with testimonial evidence, this Court has determined that the deferential standard of review applies to a trial court's determination of historical facts when that determination is based on a videotape recording. *See Montanez,* 195 S.W.3d at 109. Appellate courts defer to those determinations because of the "'superiority of a trial judge's position to make determinations of credibility'" and the need for a single fact finder to avoid costly and unnecessary "'[d]uplication of the trial judge's efforts in the court of appeals[.]'" *Manzi v. State,* 88 S.W.3d 240, 243–44 (Tex.Crim.App.2002) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Appellate courts, therefore, must defer to trial courts' factual findings, whether those findings are express or, as here, implied and whether the evidence is in the form of testimony, videotape, or anything else. *See id.; Montanez,* 195 S.W.3d at 109.

Deference to the trial court's factual findings, however, does not mean that

an appellate court must accept findings, whether express or implied, that are not supported by the record when viewed in a light most favorable to the trial court's ruling. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex.Crim.App.2000) (declining to defer to trial court's ruling where indisputable visual evidence contradicted implied findings of fact). This does not mean that the appellate court is conducting a *de novo* review. *"De novo"* means that an appellate court affords no deference to the lower court's determination and the appellate court considers the matter as if it was the court of first instance. *See* BLACK'S LAW DICTIONARY 864 (2004) (defining *"de novo* judicial review" as "nondeferential"). Rather, the appellate court upholds the trial court's express or implied findings as long as an examination of the totality of the record, viewed in a light favorable to the trial court's ruling, supports them. *See Guzman*, 955 S.W.2d at 89. When there are factual disputes regarding testimony or the contents of a videotape, the trial court's findings of historical fact are afforded almost total deference. *See id.* But when evidence is conclusive, such as a written and signed agreed stipulation of evidence or "indisputable visual evidence," then any trial-court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling. *See Carmouche*, 10 S.W.3d at 332.

*Tucker*, 369 S.W.3d at 186–87 (Alcala, J., concurring) (footnote omitted).

██ Judge Alcala's statement harmonizing *Montanez* and *Carmouche* has been adopted by the Court of Criminal Appeals in subsequent opinions. *See Duran*, 396 S.W.3d at 573 n. 36; *Miller v. State*, 393 S.W.3d 255, 263 (Tex.Crim.App.2012). Thus, when there are factual disputes regarding testimony or the contents of a recording, the trial court's findings of historical fact are afforded almost total deference. *Miller*, 393 S.W.3d at 263 (citing *Tucker*, 369 S.W.3d at 187 (Alcala, J., concurring)). But when evidence is conclusive, such as with indisputable visual evidence, then any trial court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling. *Id.*

As noted previously, Detective Sanders testified that he gave all the statutory warnings to Appellant, including the "right to terminate" warning. Under a deferential standard of review, this would be some evidence supporting the trial court's implied finding that Detective Sanders gave all of the statutory warnings. However, the audio recording indicates that the "right to terminate" warning was unintelligible and was thus not given to Appellant. In order for an oral statement that is the product of a custodial interrogation[2] to be admissible, Article 38.22, section 3(a)(2) requires that the warnings given to an accused must be given "during the recording" of the statement. CRIM. PROC. art. 38.22, § 3(a)(2); *see Leza*, 351 S.W.3d at 353 n. 28 (noting that Article 38.22, section 3(a)(2) specifically requires that the matters contained in the provision must actually appear on the recording). In light of the requirement of Article 38.22, section 3(a)(2) that the statutory warnings must actually appear on the recording, the audio recording is conclusive evidence that the

---

**2.** There is no contention that Appellant was not in custody at the time he gave the second recorded statement.

"right to terminate" warning was not given. *See Miller*, 393 S.W.3d at 263 (citing *Tucker*, 369 S.W.3d at 187 (Alcala, J., concurring)). The trial court's implied finding otherwise is inconsistent with this conclusive evidence and may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling. *Id.* The trial court erred in finding that Detective Sanders gave Appellant all the statutory warnings required by Article 38.22. Thus, the trial court erred when it allowed the audio recording of Appellant's admission into evidence over Appellant's objection.

██ Having determined that the trial court improperly overruled Appellant's objection to the admission of the audio recording, we must conduct a harm analysis to determine whether the error requires reversal of the judgment. Tex. R. App. P. 44.2. Article 38.22 prescribes various requirements that must be satisfied before the statement of an accused is admissible at trial. The failure to meet those requirements does not mean the statement was necessarily obtained as a result of a legal or constitutional violation. *Davidson v. State*, 25 S.W.3d 183, 186 n. 4 (Tex.Crim. App.2000). Therefore, compliance with Article 38.22 is not a constitutional issue, and we conduct the harm analysis required by Rule 44.2(b). *Moore v. State*, 999 S.W.2d 385, 402 (Tex.Crim.App.1999).

██ When an appellate court applies Rule 44.2(b), it must disregard a nonconstitutional error unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim.App.2011). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.* (quoting

*Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim.App.2001)) (internal quotation mark omitted). Our focus is "not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict." *Id.* at 93–94. The appellate court is to review the entire record in an effort to determine the effect that the wrongfully admitted evidence had on the verdict. *Id.* at 92–93, 96.

██ When we determine the effect that the wrongfully admitted evidence had on the verdict, we consider all the evidence that was admitted at trial, the nature of the evidence that supports the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Id.* at 94. Further, we may consider the trial court's instructions to the jury, the theories advanced in the case by the parties, closing arguments, jury voir dire, and the extent to which the State emphasized the error. *Id.*

██ A conviction must be reversed for nonconstitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error. "Grave doubt" means that, in the judge's mind, the question is so evenly balanced that he feels that he is in virtual equipoise as to the harmlessness of the error. *Id.* If such a grave doubt exists as to a defendant, then the defendant must prevail. *Id.*

This case was, as these cases typically are, a "he said, she said" case. *See Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim.App.2009) ("Sexual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative

evidence."). The only direct evidence of sexual assault was the complainant's account in her testimony. The State presented evidence from Cori Armstead, the SANE coordinator for Midland County. Armstead stated that the complainant said she was forced to have sexual intercourse with Appellant. Armstead noted that the complainant had several bruises on her body, some that were more recent and others that were older and starting to heal. However, Armstead testified that the complainant had evidence of penetration that was common in both consensual and non-consensual sex.

During voir dire, the State asked several questions about the credibility of witnesses, about whom the jury would consider credible, and about how to determine who is telling the truth in a "he said, she said" case. The State also asked during voir dire if "it would be okay, that basically if you're in a live-in relationship or if you're a husband and wife, that a spouse doesn't have the right to say no ... a husband should always be able to have sex with their wife regardless if she says no or not." During closing arguments, the State reiterated that the jury was the exclusive judge of the credibility of the witnesses and that it was important for the jury to consider who was credible and who was not.

The erroneously admitted audio recording was not innocuous. On the audio recording, Appellant admitted to continuing to have sex with the complainant, even after she told him to stop. This admission contradicted Appellant's earlier statement to the police, which diminished Appellant's credibility before the jury. Appellant's defensive theory throughout trial was that the sex was consensual and that the complainant was framing Appellant for sexual assault. Appellant's admission on the audio recording refutes his defensive theory.

Further, the State emphasized Appellant's admission during closing arguments. The State told the jury to go back and listen to the tape and his statement. The State proceeded to read Appellant's words in which he admitted to continuing to have sex after the complainant told him to stop. The State concluded by saying: "And I submit to you, based on the Defendant's statements alone, his statements alone, he knew exactly what he was doing. He was going to f—k her and just keep going." Under this record, we cannot say that we have fair assurance that the error did not influence the jury or that the error influenced the jury only slightly. Accordingly, we sustain Appellant's first issue.

Because we have determined that Detective Sanders improperly admonished Appellant under Article 38.22, we need not address Appellant's second issue regarding the admission of Appellant's extraneous offenses. *See* TEX. R. APP. P. 47.1.

### This Court's Ruling

We reverse the judgment of the trial court, and we remand this cause for a new trial.