**Opinion filed June 28, 2019**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-17-00149-CR**

_____

**RONNY MARK ALDRIDGE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 106th District Court**

**Dawson County, Texas**

**Trial Court Cause No. 16-7692**

## M E M O R A N D U M   O P I N I O N

The jury convicted Ronny Mark Aldridge of the offense of possession of less than one gram of a controlled substance in a drug-free zone,[1] found an enhancement allegation to be true, and assessed punishment at confinement for ten years. The trial court sentenced Appellant accordingly. We affirm.

---

[1]TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(b), 481.134(d) (West 2017).

There is no challenge to the sufficiency of the evidence. We will briefly outline the evidence for contextual purposes and for later reference when we discuss Appellant's issues on appeal.

At the time of the offense that is the subject of this appeal, Officer Dustin Alderman was a patrol officer with the Lamesa Police Department. At the time of trial, Alderman was a deputy with the Ector County Sheriff's Department. We will refer to him by the title that he held at the time of the offense.

While Officer Alderman was on patrol in Lamesa at around 1:35 on the morning of the offense, he saw Appellant's vehicle and noticed that the license plate light on the vehicle was not functioning. Officer Alderman stopped Appellant on a road that was adjacent to a middle school.

After Officer Alderman stopped Appellant and made contact with him, Officer Alderman asked Appellant for identification and proof of insurance. At this point, Officer Alderman smelled a strong odor of "burnt" marihuana in Appellant's vehicle. Officer Alderman asked Appellant to get out of the vehicle. For safety reasons, Officer Alderman performed a "routine pat search" to check for weapons. During the pat-down, Officer Alderman noticed a small baggie that was "close to falling out" of Appellant's pocket and in plain view. Officer Alderman believed that the substance in the baggie was methamphetamine. After Officer Alderman collected the baggie and the substance in it, he searched Appellant's vehicle. During the search of the vehicle, Officer Alderman found marihuana, a marihuana pipe, a bag of hydrocodone pills, a box made to hold small digital scales of the type used to weigh narcotics, and a glass pipe of the kind "frequently used to smoke methamphetamine." Officer Alderman arrested Appellant and charged him with possession of methamphetamine in a drug-free zone.

Appellant raises two issues on appeal. In his first issue on appeal, Appellant complains of jury charge error in the punishment phase of the trial. In his second

2

issue on appeal, Appellant asserts that the trial court abused its discretion when it admitted into evidence a probable cause affidavit and a police report, each of which had been prepared by Officer Alderman.

Appellant was not present when the jury returned its verdict in the guilt/innocence phase of the trial and neither was he present for the punishment phase. The record (outside the presence of the jury) reflects that, while the jury was deliberating its verdict on guilt/innocence, Appellant ostensibly went outside to smoke but left the courthouse and did not return for the remainder of the trial. Although we can assume that the jury was aware of Appellant's absence, the trial court did not inform the jury why Appellant was not present.

In its charge to the jury at the conclusion of the punishment phase of the trial, in the voluntary absence of Appellant, the trial court charged the jury (in accordance with Article 37.07, section 4(c) of the Texas Code of Criminal Procedure) as follows:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(c) (West Supp. 2018).

Appellant contends that the trial court erred when it gave that portion of the charge to the jury because it contained an erroneous instruction regarding Appellant's parole eligibility. Appellant concedes that he did not object to that portion of the charge, but he contends that he suffered egregious harm when the trial court submitted it.

We do not agree that the trial court erred when it submitted the parole eligibility charge. Section 481.134(d) of the Texas Health and Safety Code provides for enhancement of punishment when a defendant is convicted of certain offenses, such as possession of drugs in a drug-free zone. HEALTH & SAFETY § 481.134(d). Section 508.145(e) of the Texas Government Code applies to "[a]n inmate serving a sentence for which the punishment is increased under Section 481.134, Health and Safety Code," and mandates that such an inmate would not be "eligible for release on parole until the . . . actual calendar time served, without consideration of good conduct time, equals five years." TEX. GOV'T CODE ANN. § 508.145(e) (West Supp. 2018). Article 37.07, section 4(c) differs from Section 508.145(e) in that Article 37.07, section 4(c) provides that "[the defendant] will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed." Both provisions apply to Appellant.

The State cites to *Luquiz v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002), in support of its claim that the trial court did not commit error when it instructed the jury. In *Luquis*, the Texas Court of Criminal Appeals dealt with a similar argument to the one that Appellant makes in this appeal. There, the court addressed a like

4

provision in Article 37.07, section 4(a) of the Texas Code of Criminal Procedure. The court held that, "because the trial judge in this case instructed the jury according to the legislative dictate expressed in article 37.07, section 4(a), he did not commit error." *Luquis*, 72 S.W.3d at 363. Likewise, here, the legislature has mandated that, in the circumstances of this case, the trial court give the very instruction that it gave. *See* CRIM. PROC. art. 37.07, § 4(c). The trial court did not err when it followed the legislative mandate.

Even if we were to hold that the jury charge was erroneous, we would not reverse the judgment of the trial court. Appellant did not object to this portion of the jury charge. Therefore, we review any error for egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *Martin v. State*, 570 S.W.3d 426, 435 (Tex. App.—Eastland 2019, pet. ref'd). Egregious harm occurs when an error that affects "the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). To determine whether an error constitutes egregious harm, we must consider the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information contained in the record. *Olivas v. State*, 202 S.W.3d 137, 146 (Tex. Crim. App. 2006). The purpose behind our review is to determine whether there is any actual, as opposed to theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Officer Alderman testified that he found what he thought was, and in fact turned out to be, methamphetamine in Appellant's pocket. Officer Alderman also found marihuana, a marihuana pipe, a glass pipe of the kind frequently used to smoke methamphetamine, a box used to hold digital scales of the type normally used to weigh drugs, and a baggie of hydrocodone pills in the vehicle that Appellant was driving. All of those items were possessed in a drug-free zone. Additionally, during

the punishment phase of the trial, the prosecutor introduced evidence of Appellant's two prior convictions.

During closing arguments at the punishment phase of trial, the prosecutor referred to the instruction at issue in this case. The prosecutor told the jury, "I can't tell you that he might not do every minute of whatever sentence you give him or he might not, okay? But this is not one of those crimes where he has to do like a solid one-half of his sentence." The prosecutor said that, even though parole was not a certainty, "he is eligible" when "his time, plus whatever good credit conduct time, . . . adds up to one-fourth," and "I want you to take that into consideration . . . ." "[I]f you give him ten, fifteen, twenty years in the penitentiary, there's always that possibility that if he can straighten up and fly right, if he can rehabilitate himself a little bit, he might not have to do all that . . . ." "But in the meantime, what you write on that paper in that verdict form says how you feel as a community, as a group." The prosecutor also explained that the mere possibility of parole "doesn't mean he will get it."

The prosecutor also made appeals to the community's standards, and he asked the jury to send a message about those standards through the defendant's punishment. He also emphasized Appellant's prior criminal conduct and punishments for that conduct.

In its jury charge, the trial court instructed the jury "not to consider the manner in which the parole law may be applied to this particular defendant." In the absence of evidence to the contrary, we will presume that the jury followed the instructions of the trial court. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). There is no contrary evidence in this record to rebut that presumption.

When we consider the entire jury charge; the state of the evidence, including Appellant's prior convictions, the items of contraband possessed by Appellant at the time of his arrest, and the location at which he possessed the items; and the

6

arguments of counsel, we cannot say that any error in the jury charge on parole caused egregious harm to Appellant. We overrule Appellant's first issue on appeal.

In his second issue on appeal, Appellant contends that the trial court abused its discretion when it admitted a probable cause affidavit and a police report prepared by Officer Alderman. During the guilt/innocence phase of trial, Appellant's counsel cross-examined Officer Alderman about, and had him read, brief portions of the contents of Officer Alderman's probable cause affidavit and police report. Officer Alderman had earlier testified that he turned off the lights on his patrol vehicle to be sure that the license plate light was not functioning on the vehicle that Appellant was driving. Appellant's counsel's questions basically dealt with the fact that Officer Alderman did not include in either document anything relative to his turning off the lights on his patrol vehicle for that purpose; the questions were brief and specific.

Upon redirect examination by the State, Officer Alderman explained that he turned his lights off so that he could check the light on the license plate on the vehicle that Appellant was driving. The State also offered the probable cause affidavit and the police report into evidence, without limitation, under the rule of optional completeness. Appellant's counsel made a general objection that the documents contained "too many extraneous circumstances." The trial court admitted the affidavit and the report because defense counsel "certainly opened the door and questioned about these."

On appeal, Appellant maintains that the affidavit and the report were not admissible because the State failed to satisfy the requirements of Rule 107 of the Texas Rules of Evidence, the rule of optional completeness. TEX. R. EVID. 107. However, that was not the objection that Appellant made at trial. When the State offered the remaining portions into evidence, Appellant's general objection did not contain any reference to any of the language in Rule 107. An objection must be

sufficiently specific to preserve error.  TEX. R. APP. P. 33.1(a)(1)(A).  A general objection does not preserve error.  *Alvarez v. State*, 536 S.W.2d 357, 361 (Tex. Crim. App. 1976); *Pizano v. State*, No. 01-12-00994-CR, 2013 WL 3155954, at *2 (Tex. App.—Houston [1st Dist.] June 20, 2013, no pet.) (mem. op., not designated for publication).  Because Appellant lodged only a general objection to the admissibility of the affidavit and the report, he has not preserved error.  *See* TEX. R. APP. P. 33.1; *Alvarez*, 536 S.W.2d at 361.

However, even if we were to hold that the trial court erred and that Appellant preserved the error, any error would be harmless under Rule 44.2(b) of the Texas Rules of Appellate Procedure.  TEX. R. APP. P. 44.2(b). We ignore nonconstitutional errors that do not "affect substantial rights."  TEX. R. APP. P. 44.2(b); *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007).  Specifically, we may not reverse the judgment of the trial court for nonconstitutional error, such as erroneously admitted evidence under Rule 107, if, after examining the record as a whole, we have a "fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict."  *Casey*, 215 S.W.3d at 885.  When we make that determination, "we consider all the evidence that was admitted at trial, the nature of the evidence that supports the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case." *Baiza v. State*, 487 S.W.3d 338, 346 (Tex. App.—Eastland 2016, pet. ref'd).  We may also "consider the trial court's instructions to the jury, the theories advanced in the case by the parties, closing arguments, jury voir dire, and the extent to which the State emphasized the error."  *Id.*  Our "focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict."  *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011).

Prior to the admission of the affidavit and report, Officer Alderman had already testified, without objection, about the traffic stop, the methamphetamine, and the other contraband that he found. The State offered the contraband into evidence, and the State's forensic scientist verified that the substance contained methamphetamine. The evidence of Appellant's guilt was overwhelming.

We have examined the evidence that was admitted at trial, the nature of the evidence in support of the verdict, the nature of the alleged error, and the manner in which the questioned evidence might be considered in connection with other evidence in the case. *See Baiza*, 487 S.W.3d at 346. Based upon our review, we have a fair assurance that, even if the evidence was not admissible, it did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Casey*, 215 S.W.3d at 885. We overrule Appellant's second issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


June 28, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.