**Opinion filed November 15, 2024**



## In The

# Eleventh Court of Appeals

_____

### No. 11-23-00149-CR

_____

### GEOFFREY JAMES BROWN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. 17851**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Geoffrey James Brown, of one count of continuous sexual abuse of a young child (Count One), a first-degree felony, *see* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2024), and five counts of indecency with a child by contact (Counts Two through Six), each a second-degree felony, *see id.* § 21.11 (West 2019), and assessed his punishment at life imprisonment on Count One, and twenty years' imprisonment on each of Counts Two through Six, all

ordered to run concurrently. *See id.* §§ 12.32, 12.33 (West 2019). In a single issue, Brown argues that the trial court abused its discretion in overruling his motion to suppress statements he made during a polygraph examination. We affirm.

*Factual and Procedural History*

In October 2021, Brown's wife, A.B.,[1] received a phone call from a family member notifying her that her seventeen-year-old stepsister who had been living with A.B. and Brown, had made an outcry involving Brown. Concerned by what she had just learned about this allegation, A.B. spoke to her daughters, then-seven-year-old E.B. and fifteen-year-old T.B. Both E.B. and T.B. outcried that they too had been sexually abused by Brown. Following her daughters' outcries, A.B. contacted law enforcement. T.B. would ultimately testify at trial that Brown had touched her breasts and genitals over her clothes on numerous occasions for several years, beginning when she was around ten years old until she was fourteen. T.B. detailed an incident from when she was twelve and Brown began touching her breasts, claiming he "wanted to check on how [she] developed." T.B. said Brown commented on how her breasts were "two different sizes" and then slipped his hand down her pants and noted she had been shaving her pubic area. T.B. thereafter resorted to wearing sweatpants and sweatshirts around Brown in an effort to "feel safe." E.B., meanwhile, testified that Brown made her touch his genitals and had touched her "[b]oobs and privates" with his hands over and underneath her clothes. E.B. further described incidents of Brown performing acts of oral and digital penetration, with the latter occurring "[m]ore than once."

---

[1]To protect the identity of the complainants, we refer to them by the pseudonym given in the indictment and refer to family members with pseudonyms as well. *See* TEX. CONST. art. I, § 30(a)(1) (West 2022) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); *see generally* TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

James Goodwin, an investigator with the Palo Pinto County Sheriff's Office, interviewed Brown on December 13, 2021, as part of his investigation into the girls' allegations. While Brown admitted to the allegations involving A.B.'s stepsister, he denied inappropriately touching either of his daughters and claimed any allegations to the contrary were a result of "misunderstandings." At the conclusion of the interview, Investigator Goodwin escorted Brown to the lobby, and Brown freely departed. Investigator Goodwin thereafter obtained and executed an arrest warrant signed by Justice of the Peace Tisha Bien. Investigator Goodwin then transported Brown to Judge Bien's office for magistration proceedings, where Judge Bien admonished Brown on his rights, including his right to appointment of counsel. Brown was admonished again minutes later before undergoing a polygraph examination.

In a motion to suppress filed in March 2022, Brown challenged the admissibility of statements he made during his polygraph examination. Brown argued he had explicitly requested the appointment of counsel during magistration proceedings, and despite making his request known, he was not immediately appointed counsel; instead, he was "taken, against his will, to a polygraph examiner."

Prior to Brown's trial and ultimate convictions, the trial court held a hearing on Brown's motion to suppress. At the hearing, Investigator Goodwin testified that Brown appeared to understand his rights as read to him by Judge Bien and then later by Tony Galliton, a special agent with the Texas Department of Public Safety, Criminal Investigation Division, who conducted Brown's polygraph examination. Investigator Goodwin stated that Brown was cordial, asked appropriate clarifying questions, and appeared to understand everything that transpired in each instance. Investigator Goodwin testified that although Brown became emotional while waiting to undergo the polygraph examination, he voluntarily waived his right to an attorney,

3

never asked to stop the polygraph examination, and at no point invoked his right to counsel.

According to Agent Galliton, Brown was Mirandized[2] and explicitly advised of his statutory rights. Agent Galliton testified that Brown verbally confirmed his understanding of each individual right, voluntarily waived his rights orally, signed waiver forms to this effect, and never invoked his right to counsel. During cross-examination at the suppression hearing, Agent Galliton was asked about the question posed to him by Brown prior to any questioning: "Do I need a lawyer for this?" Agent Galliton explained that Brown had so asked in reference to signing the polygraph examination waiver, and Agent Galliton told Brown it was "completely [his] call." Agent Galliton did not interpret Brown's question as an invocation of his right to counsel.

Brown also testified at the suppression hearing. He stated that he told Investigator Goodwin during his noncustodial interview that he was not comfortable submitting to a polygraph examination, and he "[p]anicked" when he was informed that an individual was available to administer a polygraph examination following the magistration proceedings. Brown testified it was then that he "started crying" and said under his breath that he "d[id]n't want to do this." Brown acquiesced that he was Mirandized by Agent Galliton before the polygraph examination began, he was provided copies of the form that explained his rights and a consent form, and he signed both forms.

Several exhibits were admitted at the suppression hearing, including Brown's signed "Magistrate Warnings" form and forms entitled "Waiver of Rights" and "Polygraph Examination Consent." In the signed "Magistrate Warnings" form, which laid out the procedures for requesting a court appointed attorney, Brown

---

[2]*See Miranda v. Arizona*, 384 U.S. 436, 441 (1966).

circled the word "does" where prompted: "The accused does/does not want to request a court appointed attorney." Both the "Magistrate Warnings" form and "Waiver of Rights" form advised Brown, among other things, of his rights to remain silent, to have counsel appointed and present during questioning, and to stop any interview with law enforcement "at any time." Brown's signature was located on the "Waiver of Rights" form beneath the words: "I knowingly, intelligently, and voluntarily waive those rights set forth in this document." Brown additionally signed a "Polygraph Examination Consent" form, wherein he averred he was "voluntarily consent[ing] to this examination of [his] own free will." The trial court also admitted recordings of Brown's noncustodial interview, magistration proceeding, and polygraph examination.

At the conclusion of the suppression hearing, the trial court denied Brown's motion to suppress and ordered the State to prepare findings of fact and conclusions of law. Brown filed a motion to reconsider, which was later denied, and on June 8, 2023, the trial court adopted and signed the State's written Findings of Fact and Conclusions of Law. The trial court found, in relevant part, that while Brown indicated that he wanted "to request a court appointed attorney" on the "Magistrate Warnings" form, Brown "never unequivocally said that he wanted an attorney prior to any questions." The trial court further found that (1) Agent Galliton properly Mirandized Brown and read aloud the "Waiver of Rights" and "Polygraph Examination Consent" forms, which Brown signed, before commencing the polygraph examination; (2) Brown "never invoked his right to counsel"; and (3) the recordings admitted do not show Brown "nodding in the affirmative asking for an attorney." The trial court concluded that Brown "never invoked his right to counsel," and "[t]here was no clear and unambiguous invocation."

5

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence using a bifurcated standard of review. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021), *cert. denied*, 142 S. Ct. 821 (2022); *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012). "We afford almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor." *Pecina*, 361 S.W.3d at 79; *Baiza v. State*, 487 S.W.3d 338, 342 (Tex. App.—Eastland 2016, pet. ref'd). When, as here, a trial court has made explicit findings of fact, we defer to a trial court's findings that are supported by the record." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023); *see Baiza*, 487 S.W.3d at 344–45. "[L]egal questions and mixed questions that do not turn on credibility and demeanor" are reviewed de novo. *Espinosa*, 666 S.W.3d at 667. We will affirm the trial court's ruling on a motion to suppress if it is supported by the record and correct under any applicable theory of law. *Id.*

*Analysis*

Brown asserts that his request for counsel was unequivocal; therefore, law enforcement violated his right to remain silent and right to counsel by questioning him without the presence of counsel following the magistration proceedings. *See* U.S. CONST. amends. V, VI.

A. *Applicable Law*

"The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against himself." *Pecina*, 361 S.W.3d at 74–75 (citing U.S. CONST. amend. V). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. CONST. amend. VI. While the Fifth Amendment attaches once a suspect has been Mirandized, *Pecina*, 361 S.W.3d at 78, "[t]he Sixth Amendment right to counsel attaches when the prosecution has commenced."

*Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020); *see Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 212 (2008) (providing that magistration proceedings in Texas "plainly signal[]" the initiation of prosecution for purposes of Sixth Amendment applicability); *see generally Miranda*, 384 U.S. at 441. Moreover, because "both the Fifth and Sixth Amendment rights to interrogation counsel are fully encompassed by the Fifth Amendment *Miranda* doctrine," both rights "depend upon the same thing." *Pecina*, 361 S.W.3d at 77, 78. That is, "[w]hat matters . . . is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation—not what happened at any preliminary hearing." *Id.* at 78 (quoting *Montejo v. Louisiana*, 556 U.S. 778, 797 (2009)). In other words, if a defendant wishes to invoke his Fifth and Sixth Amendment rights to counsel, he must do so post-magistration at the time of a custodial interrogation after police have administered *Miranda* warnings. *Id.* at 71; *see also Perkins v. State*, No. 11-13-00257-CR, 2015 WL 3918064, at *2 (Tex. App.—Eastland June 25, 2015, no pet.) (mem. op., not designated for publication).

Any invocation of a defendant's rights under the Fifth and Sixth Amendments must be unambiguous and articulated with sufficient clarity so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Pecina*, 361 S.W.3d at 79 (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). Merely using the words "attorney" or "lawyer" is not sufficient, and law enforcement are not required to clarify a defendant's purported request. *See Davis v. State*, 313 S.W.3d 317, 339–40 (Tex. Crim. App. 2010) (reviewing cases); *see also Hartwell v. State*, 476 S.W.3d 523, 529–32 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (defendant's question, "'should I maybe call my attorney friend and see what he thinks, was not an unequivocal and unambiguous request for counsel"); *Pratt v. State*, No. 11-14-00329-CR, 2016 WL 2976111, at *2 (Tex. App.—Eastland May 19, 2016, no pet.) (mem. op., not designated for publication)

7

(concluding the same where appellant stated, "I think I need a lawyer, bro"). "Whether a statement referring to a lawyer constitutes a clear request for counsel depends on the statement itself and the totality of the circumstances surrounding the statement." *Davis*, 313 S.W.3d at 339.

B. *Discussion*

To be clear, Brown does not challenge on appeal the voluntariness of his waiver of his right to counsel. Brown instead contends his request for counsel was unequivocal as evidenced by his written request for appointment of counsel during magistration proceedings.

We find *Pecina* to be instructive. *See Pecina*, 361 S.W.3d at 71. In *Pecina*, the defendant sought to suppress statements made to police, asserting as Brown does here, that police violated his Fifth Amendment and Sixth Amendment rights by interrogating him immediately after he told a magistrate judge that he wanted a lawyer. *Id.* at 79–80. The Court of Criminal Appeals noted that the defendant's Fifth and Sixth Amendment rights were triggered by his custody and subsequent magistration proceedings, and significantly, "[h]e could invoke either or both in precisely the same manner—by telling the officers, after they gave him the *Miranda* warnings, that he wished to have an attorney before speaking to them." *Id.* at 80. The court held, however, that because the defendant failed to invoke his rights at the appropriate time—i.e., after officers gave him his *Miranda* warnings— the trial court did not abuse its discretion in denying the defendant's motion to suppress. *Id.* at 71. We reach the same conclusion here.

Irrespective of whether Brown signaled his interest in an appointment of counsel during magistration proceedings, the impetus was on Brown, for purposes of invoking his Fifth and Sixth Amendment rights, to unequivocally request counsel *after* he was Mirandized and during any point of the police-initiated polygraph examination that followed. *See id.* at 80 ("Judge Maddock's magistration did not

trigger any Fifth Amendment right concerning custodial interrogation; that was done by the detectives at the beginning of their interrogation."); *Knight v. State*, 406 S.W.3d 578, 589 (Tex. App.—Eastland 2013, pet. ref'd) ("The magistration hearing is not an interrogation event. An interrogation event provides the 'time and place to either invoke or waive the right to counsel for purposes of police questioning.'" (quoting *Pecina*, 361 S.W.3d at 78)); *see also Smith v. State*, No. 04-12-00819-CR, 2014 WL 129632, at *2 (Tex. App.—San Antonio Jan. 15, 2014, no pet.) (mem. op., not designated for publication) ("In accordance with *Montejo* and *Pecina*, we conclude Appellant's invocation of his right to counsel at his [magistration] hearing did not invoke his right to counsel for his subsequent interrogation.").

Furthermore, Brown's question to Agent Galliton, "Do I need a lawyer for this," does not constitute a clear invocation of his right to counsel.[3] As we have said, a defendant must do more than use the words "attorney" or "lawyer" to invoke his right to counsel. *See Davis*, 313 S.W.3d at 339–40; *see, e.g.*, *State v. Norris*, 541 S.W.3d 862, 865–67 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (concluding statements such as "Well, give me a lawyer or something 'cause I'm not sure I have" and "I just want to make a phone call and call my sister and see if she could . . . go get me a lawyer or something" were not unambiguous and unequivocal requests for counsel); *see also Hogue v. State*, No. 11-11-00143-CR, 2013 WL 1748836, at *3 (Tex. App.—Eastland Apr. 18, 2013, no pet.) (mem. op., not designated for publication) (concluding the same where appellant stated, "I feel like I need a lawyer"). Brown's single inquiry into whether he needed a lawyer did not amount to an unequivocal request for counsel under the Fifth and Sixth Amendments where after he was informed that it was "completely [his] call," he made no further

---

[3]Although Appellant does not raise this question on appeal, we nevertheless address it in our review of the record and the trial court's application of the law to the facts. *See State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022) (reviewing court determines whether the evidence viewed in the light most favorable to the trial court's ruling supports its explicit fact findings).

statements on the matter. *See Davis*, 313 S.W.3d at 341; *Williams v. State*, 402 S.W.3d 425, 434 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (concluding "appellant's query, 'Do I need a lawyer present for this,' is an equivocal request for counsel"); *see also Jernigan v. State*, No. 06-10-00221-CR, 2011 WL 4954168, at *2 (Tex. App.—Texarkana Oct. 19, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding appellant's question, "Do I need to get a lawyer? I mean?" was not an invocation of his right to counsel). Neither Brown's pre-magistration written request for court-appointed counsel nor his question, "Do I need a lawyer for this?" were clear, unambiguous invocations of his right to counsel.

Because Brown never invoked his Fifth or Sixth Amendment right to counsel after he was Mirandized and before the polygraph examination, we conclude that the trial court properly denied his motion to suppress his statements made during the examination. *See Pecina*, 361 S.W.3d at 78–79; *Knight*, 406 S.W.3d at 589. We overrule Brown's sole issue on appeal.

*This Court's Ruling*

We affirm the judgments of the trial court.

W. BRUCE WILLIAMS
JUSTICE

November 15, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.