**Opinion filed April 3, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00218-CR

_____

### LEONEL VILLARREAL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR28564**

### M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Leonel Villarreal, of the third-degree felony offense of driving while intoxicated (DWI). *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2024). Enhanced by a habitual-offender finding, the trial court assessed Appellant's punishment at confinement in the Institutional Division

of the Texas Department of Criminal Justice for a term of fifty years.[1] *See id.* § 12.42(d) (West 2019). In two issues, Appellant challenges the sufficiency of the evidence supporting his conviction and argues that the trial court erred in denying his motion to suppress. We affirm.

*Factual and Procedural History*

At 8:39 p.m. on September 21, 2021, Brownwood Police Department Officers James Holdar and Roberto Rodriguez received a call from dispatch regarding an intoxicated individual, later identified as Appellant, at a Stripes convenience store. At trial, the 9-1-1 recording between the dispatch operator and the caller was admitted into evidence. The caller, Chasity Allison, a Stripes employee, can be heard telling the operator that a "highly intoxicated" Hispanic male wearing all black had come into the store "acting kinda weird." Allison said that she declined to sell him alcohol and she provided a description and location of his vehicle: a two-door, maroon, older model Oldsmobile parked behind the Stripes.

Officers Holdar and Rodriguez arrived at the Stripes separately within seconds from each other and immediately located a vehicle matching Allison's description. The vehicle was registered to Appellant. Officer Rodriguez was the first to make contact with Appellant and noted that he was "buckled" in the driver's seat, the vehicle's engine was running, and the steering wheel had been tilted down, ready to drive. Officers Rodriguez and Holdar both testified that Appellant's eyes appeared glossy and bloodshot, he slurred his speech slightly when he spoke, and that he smelled of alcohol.

According to Officer Holdar, Appellant spoke as if he were "stuck in this loop," repeating the same questions to Officer Holdar even after Officer Holdar had

---

[1] Appellant was previously convicted of felony driving while intoxicated in July 2007 (probation revoked May 2011) and again in July 2014.

2

already answered them. Officer Holdar then administered standard field sobriety tests; Appellant performed poorly on all of them.

Officer Holdar testified that Appellant admitted to driving to the Stripes despite having an expired driver's license, but that he initially denied having consumed any alcohol prior to driving. Appellant's admissions were captured by Officer Rodriguez's body camera, and the recording was admitted into evidence. Appellant can be heard explaining what he did after he "drove up" to the Stripes and answering in the affirmative when Officer Rodriguez sought to clarify that Appellant had, in fact, driven there. Appellant later admitted to drinking three beers at a local restaurant before driving to the Stripes.

Appellant was placed under arrest. After Appellant refused to consent to a blood draw, Officer Holdar obtained a search warrant. Approximately two hours elapsed between when officers arrived at the Stripes and when a sample of Appellant's blood was taken. Theresa Salazar, a forensic scientist at the Texas Department of Public Safety Crime Laboratory in Midland, performed the analysis of Appellant's blood sample and determined that, at the time of the blood draw, Appellant had 0.195 grams of alcohol per 100 milliliters of blood—over two times the legal limit at the time of the blood draw. Using retrograde extrapolation, Salazar estimated that Appellant's blood alcohol content could have been 0.215 to 0.255 grams per 100 milliliters of blood prior to the officers' arrival at the Stripes.

*Sufficiency*

Appellant first argues that the evidence is legally insufficient to show that he was operating his vehicle while intoxicated because no one witnessed him actually driving, and "the State must show beyond a reasonable doubt that [he] was intoxicated while driving, not just intoxicated at the gas station."

3

A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). In reviewing the sufficiency of the evidence to support a conviction, we must "consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson*, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (quoting *Jackson*, 443 U.S. at 319). Therefore, if the record supports conflicting inferences, the reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution" and defer to the factfinder's factual determinations. *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). "[A] reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Id.* (citing *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007).

Under this standard, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted, and we treat direct and circumstantial evidence equally. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Starks v. State*, 684 S.W.3d 868, 873 (Tex. App.—Eastland 2024, no

4

pet.). In this regard, it is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland, no pet.). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). But "juries trump both trial and appellate judges on weight-of-evidence determinations." *Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (citing *Jackson*, 443 U.S. at 326).

B. *Applicable Law*

We measure the sufficiency of the evidence by comparing the evidence produced at trial against "the [essential] elements of the offense as defined by the hypothetically correct jury charge." *Turley v. State*, 691 S.W.3d 612, 617 (Tex. Crim. App. 2024); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Turley*, 691 S.W.3d at 617 (citing *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). "The law authorized by the indictment consists of the statutory elements of the offense as modified by the indictment allegations." *Baltimore*, 689 S.W.3d at 341.

5

Appellant was charged with felony driving while intoxicated. *See* PENAL §§ 49.04, 49.09(b)(2). To support a conviction for this offense, the State was required to prove that Appellant was "intoxicated while *operating* a motor vehicle in a public place." *See id.* § 49.04(a) (emphasis added); *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). "Intoxicated" is defined, in relevant part, as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or "having an alcohol concentration of 0.08 or more." PENAL § 49.01(2) (West 2011).

Although the Penal Code does not define "operate" or "operating" in this context, the Court of Criminal Appeals has held that "under a sufficiency review, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use." *Maciel v. State*, 631 S.W.3d 720, 724 (Tex. Crim. App. 2021) (citing *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)). That court has additionally "defined 'to operate' as 'to exert personal effort to cause the vehicle to function.'" *Id.* (quoting *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012)). Under this standard, Texas courts have interpreted "operating" a motor vehicle "very broadly." *Priego v. State*, 457 S.W.3d 565, 569 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Smith v. State*, 401 S.W.3d 915, 919 (Tex. App.—Texarkana 2013, pet. ref'd)). "[W]hile driving does involve operation, operation does not necessarily involve driving." *Denton*, 911 S.W.2d at 389; *Priego*, 457 S.W.3d at 569. Operation of a vehicle can be proven absent eyewitness evidence of the defendant driving. *White v. State*, 412 S.W.3d 125, 128–29 (Tex. App.—Eastland 2013, no pet.); *see Kinnett v. State*, 623 S.W.3d 876, 898 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (courts have upheld DWI convictions in situations in which the vehicle engine was running but, at the time engaged by law enforcement, defendant was not actually in the car or driving the vehicle); *see also Gameros v. State*, No. 11-19-00395-CR,

2021 WL 4998897, at *6 (Tex. App.—Eastland Oct. 28, 2021, no pet.) (mem. op., not designated for publication) (collecting cases).

C. *Analysis*

Although no witnesses at trial testified to seeing Appellant drive his vehicle during the night in question, the State presented evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant operated the vehicle and was intoxicated at the time. *See Murray*, 457 S.W.3d at 449–50. Significantly, Appellant admitted to drinking prior to driving to the Stripes, and it was a Stripes employee who contacted 9-1-1 to report Appellant for attempting to purchase alcohol while appearing intoxicated. *See Maciel*, 631 S.W.3d at 725 ("She admitted to being intoxicated, admitted to being behind the wheel of her vehicle with the engine running. . . . In accord with our jurisprudence, [a]ppellant's testimony was sufficient to admit commission of DWI."); *see also, e.g.*, *Dansby v. State*, 530 S.W.3d 213, 228 (Tex. App.—Tyler 2017, pet. ref'd) (concluding that evidence was sufficient to support DWI conviction when an officer found an unoccupied vehicle running in restaurant parking lot and located the appellant, who appeared intoxicated, inside the restaurant, and the appellant admitted he had driven his vehicle).

Although the precise length of time that Appellant had been at the Stripes before Allison called 9-1-1 was unknown, Appellant had somehow gotten to the Stripes and was by himself in the vehicle. Officers Rodriguez and Holdar independently observed signs of intoxication within moments of interacting with Appellant and testified to Appellant's continued operation of his vehicle; that is, he was buckled into the driver's seat of a vehicle registered to him and the engine was running. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (providing that "post-driving behavior such as stumbling, swaying, slurring or mumbling words" and bloodshot eyes are "usual indicia of intoxication"); *see also,*

7

*e.g.*, *Gameros*, 2021 WL 4998897, at *1, *7 (concluding that evidence was sufficient to support DWI conviction where Appellant was found as the sole occupant in the vehicle, "in and out" of sleep in the driver's seat, while the engine was on and vehicle was in gear).

Shortly after the officers initiated their detention, Appellant failed all field sobriety tests administered and refused to submit to a blood test—further evidencing Appellant's intoxication. *See Kirsch*, 306 S.W.3d at 745; *see also Perez v. State*, 495 S.W.3d 374, 383 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("The jury may consider appellant's refusal to provide a breath or blood sample as probative evidence of his intoxication."); *Robles v. State*, No. 11-19-00358-CR, 2021 WL 4899030, at *3 (Tex. App.—Eastland Oct. 21, 2021, pet. ref'd) (mem. op., not designated for publication) ("[R]efusal to submit to a breath test [is] relevant to show a consciousness of guilt." (citing *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008)); *see, e.g.*, *Nelson v. State*, 504 S.W.3d 410, 413 (Tex. App.—Eastland 2016, pet. ref'd) (concluding that evidence was sufficient to show the appellant was intoxicated where officers observed his eyes were glassy and his speech was slurred, the appellant admitted to drinking, and the appellant did not successfully complete field sobriety tests).

Following the execution of a search warrant, Appellant was confirmed to have had a blood alcohol content of 0.195 nearly two hours after officer's arrived, which Salazar testified may have put Appellant at a blood alcohol content of 0.215 to 0.255 prior to the officers' arrival at the Stripes. *See Kirsch*, 306 S.W.3d at 745 ("[Blood alcohol content]-test results, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication."); *see also Robles*, 2021 WL 4899030, at *5 (considering retrograde extrapolation testimony in its sufficiency analysis).

8

Thus, a factfinder could have reasonably inferred that there was sufficient evidence that Appellant not only drove his vehicle to the Stripes after drinking to intoxication, but that he was still intoxicated while continuing to operate his vehicle at the time of the officers' arrival. *See Murray*, 457 S.W.3d at 449–50 (concluding that because appellant was in the driver's seat of a vehicle with a running engine and the only person in the vicinity, although there were no alcoholic beverages or containers in the vehicle, the jury could have nonetheless inferred that appellant had been driving while intoxicated); *White*, 412 S.W.3d at 127, 129 (concluding same where the appellant was sitting in a McDonald's drive-through lane, "passed out" behind the steering wheel of the vehicle with the engine running, the transmission in drive, and the brake lights illuminated); *see Crawford v. State*, 496 S.W.3d 334, 340 (Tex. App.—Fort Worth 2016, pet. ref'd) (concluding that evidence was sufficient to support DWI conviction where police responded to a convenience store cashier's call concerning a customer asleep in their vehicle alone, with the engine running and the gear shift in park).

After viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have reasonably found that Appellant operated his vehicle while intoxicated and that the evidence, therefore, was sufficient to support his conviction. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (recognizing that jurors may "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence").

We overrule Appellant's first issue.

*Motion to Suppress*

Prior to trial, Appellant filed a motion to suppress evidence, and the trial court set the motion for hearing. At the hearing Officers Rodriguez and Holdar, the arresting officers, testified and exhibits were admitted, including the recording of

the initial 9-1-1 call. Appellant argued that the officers lacked reasonable suspicion to detain him and were without probable cause to arrest him. The trial court issued a written order denying Appellant's motion to suppress. In Appellant's second issue, he argues the trial court erred in denying his motion to suppress.

Although Appellant frames his argument as a "probable cause" challenge in his issue statement, the "Argument & Authorities" portion of his brief concerns only the officers' alleged lack of "reasonable suspicion" to justify Appellant's detention.[2] The State construes Appellant's issue as one challenging reasonable suspicion, and we do as well. *See* TEX. R. APP. P. 38.1; *see also Allison v. State*, No. 01-01-00383-CR, 2002 WL 31388717, at *1 n.6 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, pet. ref'd) (mem. op., not designated for publication) (concluding appellant waived any issue listed under the heading "Issues Presented for Review" that were not discussed in the body of appellant's brief).

A. *Standard of Review*

"In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review that gives almost total deference to the trial court's determination of historical facts that the record supports and consider *de novo* the application of the law to the facts." *State v. Heath*, 696 S.W.3d 677, 688 (Tex. Crim. App. 2024); *Baiza v. State*, 487 S.W.3d 338, 342 (Tex. App.—Eastland 2016, pet. ref'd). We will affirm the trial court's ruling on a motion to suppress if it is supported by the record and correct under any applicable theory of law. *Espinosa*, 666 S.W.3d at 667. When, as here, "the trial court does not file findings of fact concerning its ruling on a motion to suppress, we assume that the court made implicit findings that support its ruling, provided that those implied findings are supported by the record." *Ex Parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013)

---

[2]Appellant's "Summary of Argument" uses the phrase "probable cause to detain." As expounded on *infra*, the standard for a warrantless detention is "reasonable suspicion" *not* "probable cause."

(citing *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005)); *Swanger v. State*, No. 11-23-00183-CR, 2024 WL 3817325, at *2 (Tex. App.—Eastland Aug. 15, 2024, no pet.) (mem. op., not designated for publication).

   B. *Applicable Law*

   "Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *see State v. Garcia-Cantu*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008) ("It is only when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen,' will courts conclude that a Fourth Amendment 'seizure' has occurred." (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968))).  It is the State's burden to establish that a warrantless investigative detention was supported by reasonable suspicion.  *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018); *Derichsweiler*, 348 S.W.3d at 913 & n.24 (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).  "Reasonable suspicion exists if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude the person is, has been, or soon will be engaged in criminal activity." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022).  This standard "looks to the totality of the circumstances," asks "whether there was an objectively justifiable basis for the detention," and "disregards the actual subjective intent of the arresting officer." *Derichsweiler*, 348 S.W.3d at 914.  "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id.* (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)).

   An officer may rely on the statements of a citizen caller to initiate a detention if the citizen's information contains sufficient indicia of reliability.  *Ibarra v. State*, 479 S.W.3d 481, 490 (Tex. App.—Eastland 2015, pet. ref'd); *Esquivel v. State*,

11

No. 11-12-00313-CR, 2015 WL 544944, at *3 (Tex. App.—Eastland Jan. 15, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding same where officer received an anonymous tip). In situations where a caller places themself in a position to be held accountable for their report, minimal corroboration is required. *Derichsweiler*, 348 S.W.3d at 914–15; *Boyd v. State*, No. 11-10-00059-CR, 2011 WL 2175874, at *3 (Tex. App.—Eastland June 2, 2011, pet. ref'd) (mem. op., not designated for publication). "In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Derichsweiler*, 348 S.W.3d at 915.

C. *Analysis*

On appeal, Appellant specifically complains that his detention was unlawful because Allison's claim that he was intoxicated went uncorroborated, and there was insufficient evidence for either officer to believe that he had committed the offense of driving while intoxicated at the time he was detained. Contrary to Appellant's assertions, the legality of Appellant's detention is not solely contingent on the existence of evidence that he had already committed the offense for which he was subsequently arrested; it is sufficient that the State prove that the officers reasonably believed Appellant would soon be engaged in *any* criminal activity. *See Hardin*, 664 S.W.3d at 872; *Swanger*, 2024 WL 3817325, at *3. We find *Derichsweiler* to be instructive. *See Derichsweiler*, 348 S.W.3d at 916.

In *Derichsweiler*, an officer was dispatched to a Wal-Mart parking lot following a message from dispatch about "a suspicious car that was 'circling the parking lot of Wal-Mart and McDonald's'" driven by an individual "grinning and staring" at the caller. *Id.* at 909–10. Supplied with only the make, model, color and license plate number of the suspicious car, the officer detained the driver. *Id.* at 910.

12

The detention led to a DWI investigation that culminated in the appellant's arrest and prosecution. *Id.* at 911. The court concluded that "for purposes of a reasonable-suspicion analysis, it is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon." *Id.* at 917.

Here, Officers Rodriguez and Holdar testified during the suppression hearing and at trial, their testimony did not substantially change. Officer Rodriguez testified that he had worked for the Brownwood Police Department for over six years during which time he had been trained in traits and signs of intoxication and on how to administer standard field sobriety tests. Officer Holdar was less experienced than Officer Rodriguez, having worked in law enforcement for approximately six months. Both officers stated that they received a call from dispatch concerning an intoxicated individual at a Stripes, and because the caller provided enough identifying descriptors, officers were immediately able to locate the vehicle and individual, later identified as Appellant. Both Officers Rodriguez and Holdar testified that they had previously received calls from this Stripes location concerning intoxicated persons that had proven to be accurate; Officer Rodriguez testified that they were "very credible." The 9-1-1 recording and dispatch call log were admitted at the hearing, the former indicating that Appellant had been "acting strange" as well. The vehicle, as described in the 9-1-1 call, was parked behind the store. Much like the caller in *Derichsweiler*, Allison identified herself to the 9-1-1 dispatcher and remained answerable to her report after the fact. *Id.* at 915. Here, Officer Rodriguez personally spoke with the clerk, who he described as credible. Appellant was asked to step out of the vehicle, he stumbled, and it was observed that he had "glossy[,]" "bloodshot" eyes and had the "very apparent" smell of beer on him and on his breath. Officer Holdar administered the standard field sobriety tests that he described, which gave him "sufficient clues" of Appellant's intoxication. Officers Rodriguez and

13

Holdar further testified that they had reasonable suspicion to detain Appellant based on the totality of the circumstances, which included their consideration of Allison's information and the credibility of that information. *See id.* at 910, 916–17. Officer Rodriguez further opined that detention was appropriate because Appellant's reported behaviors would tend to indicate that Appellant was either "impaired while in a public place," "about to commit a burglary," *or* driving while intoxicated.

When information suggests that "a crime is *about* to occur, the requirement that there be 'some indication that the unusual activity is related to crime' does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent." *See id.* at 917. Thus, it is not fatal to the State's claim of reasonable suspicion that the officers themselves did not witness evidence of Appellant's intoxication prior to initiating the detention or that the "unusual activity" for which they detained Appellant was not the crime with which he was eventually charged. *See id.*; *see also Small v. State*, No. 01-22-00425-CR, 2023 WL 4239874, at *1–2, *15 (Tex. App.—Houston [1st Dist.] June 29, 2023, no pet.) (mem. op., not designated for publication) (concluding officer had reasonable suspicion to stop the appellant based on a 9-1-1 caller claiming she had witnessed the appellant "stuffing someone into his car's trunk" although the appellate did nothing wrong in the officer's presence, the 9-1-1 caller turned out to be incorrect, and the appellant was ultimately arrested for felon in possession of a firearm); *State v. Hartley*, No. 03-21-00230-CR, 2022 WL 2251659, at *6–7 (Tex. App.—Austin June 23, 2022, no pet.) (mem. op., not designated for publication) (concluding same where the 9-1-1 caller was reporting a reckless driver, the officer did not observe any commission of a traffic offense, and the appellant was later arrested for driving while intoxicated).

Therefore, the trial court did not abuse its discretion when it denied Appellant's motion to suppress. *See Derichsweiler*, 348 S.W.3d at 917–18; *see also Espinosa*, 666 S.W.3d at 667.

We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


April 3, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.